STATE OF NEBRASKA, APPELLEE, V.
DWAYNE TUCKER, APPELLANT.

598 N.W. 2d 742

Filed August 20, 1999. No. S-98-407.

Mary C. Gryva, of Frank & Gryva, P.C., for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Dwayne Tucker (Tucker) appeals from the Douglas County District Court's order denying his motion for postconviction relief. Tucker was convicted of felony murder and sentenced to life imprisonment in 1982. On direct appeal, we affirmed Tucker's conviction and sentence. See *State v. Tucker*, 242 Neb. 336, 494 N.W.2d 572 (1993). Tucker then filed a motion for postconviction relief assigning several errors, namely ineffective assistance of trial and appellate counsel. The district court denied Tucker's motion. The primary issue under review is whether the district court erred in denying Tucker postconviction relief without conducting an evidentiary hearing. For the reasons stated herein, we conclude that Tucker was not entitled to an evidentiary hearing on his motion for postconviction relief, and we affirm the order of the district court.

## BACKGROUND

Tucker was found guilty of first degree felony murder for aiding and abetting his half brother, Willie Tucker, in a robbery at the International House of Pancakes (IHOP) in Omaha, Nebraska, during which Willie Tucker shot and killed the cashier, Lisa Lisko. The robbery and murder occurred on December 23, 1981, when Tucker was 17 years old. On December 31, police officers arrived at Tucker's home with a search warrant and an arrest warrant for Tucker. Tucker arrived at his home after the police had begun to execute the search and was immediately placed under arrest and transported to the police station. Tucker eventually offered a confession which was recorded on tape.

Trial counsel moved to suppress the taped confession and related evidence, arguing that the arrest warrant for Tucker lacked probable cause. The motion to suppress was overruled, and at trial, counsel did not object to the admission of the confession. None of the witnesses at trial were able to identify Tucker in connection with the crime. The only evidence which identified Tucker as one of the perpetrators was his confession at the station and his own testimony at trial. On July 14, 1982, Tucker was convicted of first degree felony murder, and on July 28 he was sentenced to life imprisonment.

No direct appeal was taken of Tucker's case in 1982. On January 31, 1991, Tucker filed a motion for leave to file a direct appeal out of time. At the hearing regarding his motion, Tucker testified that he never discussed the appeal process with his trial counsel and had assumed the appeal would be automatic. Trial counsel testified that he did not recall discussing the appeal process with Tucker and had assumed that the appeal would be handled by the office of the public defender. Tucker was allowed a direct appeal and appointed counsel.

On direct appeal, Tucker argued that (1) his motion for change of venue should have been granted, (2) there was insufficient evidence to convict him, and (3) the sentence imposed was excessive. We found no merit to his assignments of error and affirmed his conviction and sentence. See *State v. Tucker*, *supra*.

On March 5, 1997, Tucker filed a pro se motion for postconviction relief with the Douglas County District Court. On March 25, 1998, the district court denied the motion without holding an evidentiary hearing. Tucker filed a notice of intent to appeal the district court's order denying his motion for postconviction relief and was appointed counsel for this appeal.

## ASSIGNMENT OF ERROR

Tucker contends, rephrased and summarized, that the district court erred in denying his motion for postconviction relief without granting him an evidentiary hearing on his claims of ineffective assistance of counsel in the following matters: (1) Trial counsel failed to adequately address his pretrial motion to change venue and preserve it for appeal, (2) trial counsel failed to preserve the pretrial objections to the sufficiency of the arrest warrant for appeal, (3) trial counsel elicited improper prejudicial testimony regarding Tucker's juvenile record during trial, (4) trial counsel failed to object to jury instruction No. 10, and (5) counsel on direct appeal was ineffective in failing to raise the ineffectiveness of trial counsel regarding these matters.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Smith*, 256 Neb. 705, 592 N.W.2d 143 (1999); *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998); *State v. Ditter*, 255 Neb. 696, 587 N.W.2d 73 (1998).

## ANALYSIS

The primary issue involved in this appeal is whether the district court erred in denying Tucker's motion for postconviction relief without an evidentiary hearing. An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proven, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *State v. Smith, supra; State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999); *State v. Silvers, supra*. That is, an evidentiary hearing is required if the facts alleged would justify relief, if true, or when a factual dispute

arises as to whether a constitutional right is being denied. *State v. Silvers, supra.* An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law. *State v. Smith, supra; State v. Silvers, supra.* Even with an appropriate factually alleged motion for postconviction relief, an evidentiary hearing may be denied when the records and files affirmatively show that the defendant is entitled to no relief. *State v. Smith, supra; State v. Moore, supra; State v. Silvers, supra.*

When a defendant in a postconviction motion alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney performed at least as well as a criminal lawyer with ordinary training and skill in the area. *State v. Moore, supra; State v. Silvers, supra.* Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his or her case as a result of the attorney's actions or inactions. *State v. Moore, supra; State v. Silvers, supra.* That is, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Hunt,* 254 Neb. 865, 580 N.W.2d 110 (1998); *State v. Burnett,* 254 Neb. 771, 579 N.W.2d 513 (1998); *State v. Marshall,* 253 Neb. 676, 573 N.W.2d 406 (1998). These two prongs may be addressed in either order. *State v. Smith, supra; State v. Hunt, supra.* If it is prudent to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, that course should be taken. *State v. Smith, supra; State v. Hunt, supra; State v. Marshall, supra.*

The appellant in a postconviction proceeding has the burden of alleging and proving prejudice. In light of all the evidence before the jury, the defendant must show that it was reasonably likely that the decision reached would have been different, absent the errors. *State v. Hunt, supra.* A strong presumption exists that counsel's actions were reasonable. *State v. Silvers, supra* (citing *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Even if counsel's actions were found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Id.*

We examine Tucker's claims in light of the above-stated legal principles. Tucker contends that the district court erred in denying him an evidentiary hearing on his motion for postconviction relief with regard to four matters.

### MOTION FOR CHANGE OF VENUE

Tucker first contends that he was denied effective assistance of counsel with regard to his pretrial motion for a change of venue. Although Tucker has assigned and argued this issue, Tucker's motion for postconviction relief does not factually or otherwise allege any matters related to a motion for change of venue. A court is not required to grant an evidentiary hearing on a motion for postconviction relief which does not contain sufficient factual allegations concerning a denial or violation of constitutional rights. *State v. Parmar*, 249 Neb. 462, 544 N.W.2d 102 (1996). Because Tucker's motion did not contain any factual allegations regarding his motion for a change in venue, he is not entitled to postconviction relief on this issue, and the district court did not err in denying him an evidentiary hearing with regard to this matter. This assignment of error is without merit.

### ARREST WARRANT

Tucker's second claim for ineffective assistance of counsel relates to the sufficiency of his arrest warrant. In his pro se motion, Tucker alleges that his arrest warrant failed to recite the substance of the accusation against him and did not establish sufficient probable cause. Tucker further alleges that as a result of the invalid warrant, his arrest, confinement, and custody are unlawful. One inference which can be drawn from these allegations is that evidence seized from this arrest was the only evidence of his guilt.

We find these allegations, if true, show a reasonable probability that the outcome could have been different if the evidence from the arrest was suppressed. Thus, the performance of counsel could have been deficient in failing to preserve this issue for appeal. Taken as a whole and considering that Tucker filed his motion pro se, we find that Tucker's allegations are sufficiently specific to require us to examine files and records to determine whether they affirmatively show that Tucker is not entitled to

postconviction relief. See *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998). As we pointed out in *Silvers*, the question before us is not whether the defendant is entitled to postconviction relief, but whether an evidentiary hearing should be held to determine that question. We conclude, however, that Tucker is not entitled to an evidentiary hearing on this matter, because the records and files affirmatively show that he is entitled to no relief.

Tucker alleges that the issuing magistrate lacked sufficient probable cause to issue an arrest warrant. Tucker points to the complaint, the information, and the warrant itself, claiming that "[o]nly a bare bones conclusion that Appellant committed the murder during a robbery is alleged. There is nothing which established probable cause." Brief for appellant at 10.

In determining whether probable cause exists for the issuance of an arrest warrant, the issuing magistrate is to make a commonsense decision whether, given the totality of the circumstances set forth in the affidavit before him or her, including the veracity and basis of knowledge of the persons supplying the hearsay information, there is a fair probability the defendant was implicated in the crime. *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991). A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making the determination as to factual questions, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. However, to the extent questions of law are involved, an appellate court is obligated to reach conclusions independent of the decisions reached by the courts below. See *State v. Edmonson, ante* p. 468, 598 N.W.2d 450 (1999).

The records and files reveal that Tucker's trial counsel filed a motion to suppress Tucker's taped confession on the basis that Tucker's arrest warrant lacked probable cause. The record before us includes the bill of exceptions from the suppression hearing. At the suppression hearing, it was established that three

identical affidavits were given to the magistrate in support of three search warrants. These affidavits are included as exhibits within the bill of exceptions. The officer who obtained all of the warrants testified that the applications and affidavits were used to obtain both the search warrants and the arrest warrant for Tucker.

With regard to a probable cause determination for the arrest of Tucker, the affidavits recited several facts, including the following information: (1) A waitress at the IHOP had been shot during an apparent robbery; (2) two suspects were identified, suspect No. 1 being a black male, 18 to 19 years of age, 5 feet 8 inches to 5 feet 9 inches in height, 145 to 150 pounds, thin build, mustache, afro-style hair 1 to 2 inches in length, wearing a tan coat, and suspect No. 2 being a black male, 19 years of age, 5 feet 8 inches to 5 feet 9 inches in height, medium build, wearing a blue coat; and (3) a reliable confidential source had "heard a group of Black males on 24th Street mentioning that one of the suspects involved in the killing of the waitress at the [IHOP] worked at Ollie's Cleanup Shop." In another conversation with this informant, the informant

> relayed the following additional facts overheard in the conversation mentioned above: 1.) that the suspect that worked for Ollie's [Cleanup Shop] was possibly parttime and that he was younger than the second suspect; 2.) the second suspect was related to the first suspect, possibly a brother or other close relation; 3.) the second suspect drove an Oldsmobile.

The reliable confidential informant who was the source of this information had provided information to officers in the past for approximately 12 search warrants, and there were felony charges pending as a result of the information supplied by this informant. Also, (4) further investigation by officers revealed that Ollie Davis was the owner of Ollie's Cleanup Shop and the uncle of Tucker and that Tucker worked part time at Ollie's Cleanup Shop; and (5) another source of information

> stated that they heard the conversation in which Willie Tucker said that he had shot the waitress at the [IHOP] and that he had meant to shoot the girl in the arm but that the girl had turned and was struck in the chest. Willie Tucker also said that he and his brother Dwayne Tucker had done

the robbery and that they had gotten about $60 or $62. The waitress had stalled and said the gun was not real and that if they stayed any longer, she would be able to identify them.

This informant had previously provided information in a different robbery and shooting, which information had proved true and correct and had led to two convictions.

When a search warrant is obtained on the strength of an informant's information, the affidavit in support of the issuance of the warrant must (1) set forth facts demonstrating the basis of the informant's knowledge of criminal activity and (2) establish the informant's credibility, or the informant's credibility must be established in the affidavit through a police officer's independent investigation. *State v. Lytle*, 255 Neb. 738, 587 N.W.2d 665 (1998), *overruled on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999). This also holds true for the issuance of arrest warrants. Among the ways in which the reliability of an informant may be established are by showing in the affidavit that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his or her penal interest, and (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *Id.*

The affidavits supporting Tucker's arrest warrant sufficiently set out facts demonstrating the basis of the informants' knowledge and credibility. Given the totality of the circumstances set forth in the affidavits, the issuing magistrate received sufficient information on which to base a determination that there existed a fair probability that Tucker was implicated in the crime. See *State v. Cortis*, 237 Neb. 97, 465 N.W.2d 132 (1991). In our de novo review, we conclude that there was probable cause to issue the arrest warrant for Tucker. See *State v. Edmonson, ante* p. 468, 598 N.W.2d 450 (1999).

Even if the motion to suppress had been preserved for appeal, there is no reasonable probability that the evidence obtained from Tucker's arrest would have been suppressed. Tucker was, therefore, not prejudiced by any action or inaction of his counsel with regard to his arrest warrant. Accordingly, the district

court did not err in denying Tucker postconviction relief without an evidentiary hearing on this issue, because the records and files affirmatively show that he is entitled to no relief. See *State v. Silvers, supra.* This assignment of error is without merit.

### TESTIMONY OF JUVENILE RECORD

Tucker's third claim regarding the ineffectiveness of his counsel relates to improper elicitation of prejudicial testimony by his defense counsel during trial. The objectionable testimony, as set out in Tucker's motion, is as follows:

Q. Now, have you ever been convicted of a felony before?

A. No.

Q. Have you ever been in trouble with the law before?

A. Yes, juvenile.

Q. And how old were you at that time?

A. Thirteen.

Q. What was that all about?

A. Me and my brother jumped on somebody.

Q. It was a fight?

A. Yes.

Q. Other than that have you had any trouble with law enforcement or any laws?

A. No.

In his motion, Tucker alleges that the elicitation of this testimony is prohibited by Neb. Evid. R. 609(4), Neb. Rev. Stat. § 27-609(4) (Reissue 1995). Therefore, Tucker asserts that counsel was deficient by eliciting this information about his juvenile record which could not otherwise have been proffered. Tucker further alleges that

trial counsel's conduct and trial strategies denied Mr. Tucker his right to receive a fair trial when counsel for the defense inflamed the jury with elicited testimony in violation of Neb.Rev.Stat. (Nebraska Evidence Rule), § 27-609(4) preventing the jury considerations to the lesser included jury instructions of aiding and abeding [sic] when evidence was directed and presented that Willie Tucker fired the shot that killed Lisa M. Lisko, and caused her death.

It is unclear exactly what prejudice Tucker is attempting to allege. We are unable, however, to interpret this allegation in any manner that would establish prejudice amounting to a constitutional violation. Assuming Tucker is alleging that he was prejudiced by this testimony because the jury was prevented from considering a lesser-included charge, such an allegation would have no merit. No prejudice could result from the jury's failure to consider a lesser-included charge because there is no lesser-included charge to first degree felony murder in this state. See *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998), *rehearing denied* 526 U.S. 968, 119 S. Ct. 5, 141 L. Ed. 2d 766. See, also, *State v. Moore*, 256 Neb. 553, 591 N.W.2d 86 (1999).

Tucker has not alleged sufficient factual allegations of prejudice which demonstrate a reasonable probability that but for the elicited testimony, the result of the proceeding would have been different. See *State v. Hunt*, 254 Neb. 865, 580 N.W.2d 110 (1998). He has, therefore, failed to allege sufficient facts which constitute an infringement of his constitutional right to effective assistance of counsel on this issue. Accordingly, the district court was not clearly erroneous in denying Tucker postconviction relief in this matter without an evidentiary hearing.

### Jury Instruction

Tucker's final claim for ineffective assistance of counsel relates to jury instruction No. 10, which instruction was fully set forth in his motion. Instruction No. 10 was given in regard to aiding and abetting. In his pro se motion, Tucker alleges that jury instruction No. 10 failed to correctly and lawfully instruct the jury that the defendant must have the intent and knowledge of the principal offender in order to be convicted as an aider and abettor. Tucker further alleges that the instruction was prejudicially defective and that the failure to properly instruct on an essential element of the offense requires reversal of the conviction. In support of his allegations, Tucker cites to *State v. Johnson*, 236 Neb. 831, 464 N.W.2d 167 (1991).

The aiding and abetting instruction set forth in Tucker's motion, instruction No. 10, does not refer to the element of intent. In a criminal trial, the court in its instructions

must delineate for the jury each material element the State is required to prove beyond a reasonable doubt to convict the defendant of the crime charged. *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999). When a crime requires the existence of a particular intent, an alleged aider and abettor can be held criminally liable as a principal if it is shown that the aider and abettor knew that the perpetrator of the act possessed the required intent, or that the aider and abettor himself or herself possessed the required intent. *Id.* Therefore, in order for the court's jury instructions to be sufficient on the issue of intent in a prosecution for felony murder under an aider and abettor theory, the jury instructions must instruct the jury that the aider and abettor either personally intended that the underlying felony be committed or aided another person whom the aider knew had such an intent. *Id.*; *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996).

We find that Tucker alleged sufficient facts with regard to this jury instruction. If proved true, these allegations would demonstrate that both his trial and appellate counsel performed below the standard expected of reasonable criminal defense counsel and that Tucker was prejudiced by the deficient performance. Thus, we turn to the records and files to determine whether they affirmatively show that Tucker is entitled to no relief.

Instruction No. 10 was given as follows:

> To be guilty of the crime charged, it is not necessary that the State prove that the defendant himself committed the unlawful act or acts in question.
>
> Whoever aids, abets, or procures another to commit any offense may be prosecuted and punished as if he were the principal offender.
>
> If you find from the evidence beyond a reasonable doubt that the unlawful act or acts in question were committed by another person who was:
>
> 1. Engaged by the defendant to commit the unlawful act or acts; or
>
> 2. Engaged with the defendant in a common, concerted, unlawful act or acts; or

3. Incited or encouraged by the defendant to commit the unlawful act or acts,

then the defendant is as guilty as if he himself committed the unlawful act or acts, and it is your duty to find the defendant guilty.

Aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary; nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient.

On the other hand, evidence of mere presence, acquiescence, or silence is not enough to sustain the State's burden of proving the defendant guilty.

Jury instructions are not read in isolation, however. All the jury instructions must be read together, and if taken as a whole they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Lotter, supra; State v. Mantich, supra.* Tucker alleges that jury instruction No. 10 did not instruct on the element of intent required under an aider and abettor theory. A review of the records and files, however, reveals that a separate instruction on intent was given at Tucker's trial.

Instruction No. 8 stated:

Criminal intent is a material and necessary element of the crime of First Degree Murder as charged against the defendant, but the intent required is not an intent to kill Lisa M. Lisko, but is an intent to commit a robbery. Intent is a mental process, and it therefore generally remains hidden within the mind where it is conceived. It is rarely—if ever—susceptible of proof by direct evidence. It may, however, be inferred from the words and acts of the defendant and from the facts and circumstances surrounding his conduct. But before that intent can be inferred from such circumstantial evidence alone, it must be of such character as to exclude every reasonable conclusion except that the defendant had the required intent. To determine the intent

of the defendant in this case, you are to examine all the evidence, facts and circumstances appearing in the case which may throw light upon the alleged intent of the defendant. It is for you to determine from all the facts and circumstances in evidence whether or not the defendant committed the acts complained of and whether at such time he had the criminal intent required. If you have any reasonable doubt with respect to either, you must find the defendant not guilty.

All the jury instructions read together and taken as a whole correctly stated the law, were not misleading, and adequately covered the issues supported by the pleadings and the evidence. See, *State v. Lotter*, 255 Neb. 456, 586 N.W.2d 591 (1998), *modified on denial of rehearing* 255 Neb. 889, 587 N.W.2d 673 (1999); *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996). Read together, these instructions properly instructed the jury on the element of intent, and Tucker was not prejudiced by the absence of instruction on the element of intent in instruction No. 10. There is no prejudicial error necessitating reversal, and consequently, there is no prejudice constituting a violation of Tucker's constitutional right to effective assistance of counsel. The records and files affirmatively show that Tucker was entitled to no relief with regard to this issue, and the district court did not err in denying postconviction relief on this claim without an evidentiary hearing.

## CONCLUSION

Tucker is not entitled to postconviction relief on any of his claims. The district court did not err in denying his motion without an evidentiary hearing. The order of the district court denying postconviction relief is affirmed.

AFFIRMED.